NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000405
16-JUL-2014
07:53 AM

NO. CAAP-13-0000405

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ROGER W. EGUCHI-BRYANT,
Claimant-Appellant,
v.
PROSERVICE HAWAII/ALL TREE SERVICES, INC.,
Employer-Appellee, Self-Insured
and
SEABRIGHT INSURANCE COMPANY,
Insurance Carrier-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2009-415(H) (1-07-01072))


SUMMARY DISPOSITION ORDER
(By: Foley, Presiding J., Leonard and Reifurth, JJ.)

In this workers' compensation case, Claimant-Appellant
Roger W. Eguchi-Bryant (**Roger**) appeals from the Labor and
Industrial Relations Appeals Board's (**LIRAB**) Decision and Order
entered January 9, 2013 and LIRAB's Order Denying Motion to
Reopen entered March 13, 2013.

While employed as a climber by Employer-Appellee, Self-
Insured Proservice Hawaii/All Tree Services, Inc. (**Employer**),
Roger sustained a work related injury to his head, neck, left
elbow, upper-mid-low back, left knee, and psyche after a log
struck him on December 20, 2007; Employer accepted liability for
the injury. On appeal, Roger contends LIRAB erred by concluding

he was not entitled to total temporary disability (**TTD**) benefits from November 20, 2009 through June 1, 2010.[1]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Roger's appeal is without merit.

Appellate review of LIRAB's decision is governed by Hawaii Revised Statutes (**HRS**) § 91-14(g) (2012 Repl.), which provides:

> (g)     Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:
>
> (1)     In violation of constitutional or statutory provisions; or
>
> (2)     In excess of the statutory authority or jurisdiction of the agency; or
>
> (3)     Made upon unlawful procedure; or
>
> (4)     Affected by other error of law; or
>
> (5)     Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6)     Arbitrary or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Under HRS § 91-14(g), conclusions of law (**COLs**) are reviewable under subsections (1), (2), and (4); questions regarding procedural defects are reviewable under subsection (3).

A COL is not binding on an appellate court and is freely reviewable for its correctness. Thus, the court reviews COLs de novo, under the right/wrong standard. <u>Tam v. Kaiser Permanente</u>, 94 Hawai'i 487, 494, 17 P.3d 219, 226 (2001).

Roger contends LIRAB clearly erred by finding Employer's September 23, 2009 letter was a "warning letter" to

---

[1]     The issue involves Roger's placement in two alternate light duty work assignments, Pearl Harbor Memorial Fund (**Memorial Fund**) and Habitat for Humanity (**Habitat**), both non-profit organizations. The light duty work was arranged by Employer.

terminate TTD benefits. LIRAB described the September 23, 2009 letter as warning letter regarding employment termination:

> 9. By letter dated September 23, 2009, Employer informed [Roger] that the alternate light duty location informed them about his "persistent and unrelenting verbal comments about [his] injury and [his] light duty assignment have caused an unpleasant work environment for other volunteers/co-workers on the premises. The alternate light duty location has requested that you not return." Employer stated that they would proceed with securing another alternate light duty location.
>
> [Roger] was informed that it was his "first warning that failure to adhere to [Employer's] Rules of Conduct policy (attached for [his] reference) will result in immediate termination.["]
>
> 10. [LIRAB] finds that Employer's letter was a warning letter and indicated that [Roger] would be given another chance to participate in Employer's efforts to return him to temporary modified duty work.

Roger maintains "the warning letter by [Employer] did not give any warnings by [Insurance Carrier-Appellee Seabright Insurance Company] to [Roger] that his TTD might be terminated if [Roger] continued to act inappropriately at the next alternate light duty work site." However, Roger provides no authority for the proposition that a employment termination "warning letter" must also warn an employee of possible TTD benefits termination.

Roger contends LIRAB erred as a matter of law by concluding he was not entitled to TTD benefits from November 20, 2009 through June 1, 2010 because the Employer's TTD benefits termination notice (**TTD Notice**) did not comply with HRS § 386-31(b) (1993). Under HRS § 386-31(b), an employer may terminate TTD Benefits if a claimant is able to resume work, provided that the employer must "notify the employee and the director in writing of an intent to terminate such benefits at least two weeks [before] the date when the last payment is to be made." This notice must (1) "give the reason for stopping payment" and (2) "inform the employee that the employee may make a written request to the director for a hearing if the employee disagrees with the employer." HRS § 386-31(b). Roger contends the TTD Notice did not satisfy HRS § 386-31(b) because it did not give the reason for stopping payments. This contention has no merit. The TTD Notice provided that Employer terminated Roger's TTD

benefits because his actions at his alternate light duty work placements constituted a refusal to work and this refusal resulted in his termination from Employer. The TTD Notice also provided that benefits would be terminated two weeks from the date of the notice and provided the procedure for challenging the termination of benefits. Consequently, the TTD Notice complied with HRS § 386-31(b).

Roger contends LIRAB clearly erred by finding the light duty work provided by Employer was reasonable and appropriate because both alternate light duty assignments were volunteer positions at non-profit organizations and thus, the positions did not constitute "employment" under workers' compensation law and as a result. Since the assignments did not constitute employment, there was no light duty work offered for Roger to refuse. This contention relies on the definition of "employment" under HRS § 386-1 (Supp. 2013), which excludes unpaid service for non-profits:

> §386-1 Definitions.
>
> . . .
>
> "Employment" means any service performed by an individual for another person under any contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully entered into. It includes service of public officials, whether elected or under any appointment or contract of hire, express or implied.
>
> "Employment" does not include:
>
> (1)　Service for a religious, charitable, educational, or nonprofit organization if performed in a voluntary or unpaid capacity;
>
> (2)　Service for a religious, charitable, educational, or nonprofit organization if performed by a recipient of aid therefrom and the service is incidental to or in return for the aid received[.]

Assuming the definition of employment may be used as urged by Roger's position, the contention has no merit. While Roger's light duty assignment included work at non-profit organizations, it was not in a voluntary or unpaid capacity. Roger was paid by Employer to render services to the Memorial Fund and Habitat:

> Q. [Roger's Counsel] Let me clarify one thing. As far as pay he'll work four hours but still get his full TTD benefits? Is that how it works?

> A. [Manager of Claims for Employer] We pay them for working -- they are doing volunteer work for the volunteer [organization]. But [Employer] is paying them for the hours to be there. And then the claim pays for the rest.

Roger relatedly contends the purpose of the light duty positions was not to get him hired by those charitable organizations and as a result, the positions did not constitute reasonable and appropriate employment. Roger provides no authority for this contention.

Roger contends LIRAB clearly erred by finding the alternate light duty work provided by Employer was reasonable and appropriate because the right to accept or reject the volunteer remained with the non-profit organization. Roger continues that the "unreasonableness and inappropriateness of this arrangement, surfaces where the non-profit organization, before using the volunteer, decides to not use the volunteer and then the employer construing the non-profit organization's decision to not use the volunteer as the volunteer's rejection of the modified duty work offer." Essentially, Roger disagrees with LIRAB's finding that his actions constituted a refusal to return to work, contending there are no reliable, probative and substantial facts to show he behaved inappropriately to warrant a termination of TTD benefits. This contention lacks merit.

Roger's October 20, 2008 functional capacity evaluation (**FCE**), and subsequent work releases leading up to November 5, 2009, issued by Roger's treating physician, provided Roger was capable of light duty work and could lift 25 pound from the waist up.[2] Two representatives of Employer stated Memorial Fund requested Roger not return because Roger's persistent comments about his injury created an unpleasant work environment. A Habitat employee testified (1) that Habitat did have work that fit within Roger's work restrictions: "[Roger] could probably sort things. You know, we had tons of nuts and bolts[;]" (2) that this task would allow Roger to both sit and stand as needed

---

[2] Notably, LIRAB found the light duty work offered by the Memorial Fund and Habitat were within Roger's physical capabilities under the 2008 FCE and Roger does not challenge this finding. To the contrary, Roger admits the positions were within his capabilities per the 2008 FCE.

for comfort; (3) that Roger stated he could not lift from the waist up; and (4) the purported inability to lift from the waist up precluded Roger from any work at Habitat.

Before each light duty work assignment, Employer informed Roger to follow the Rules of Conduct policy, which required courteous and professional behavior, and that failing to do so would be considered a refusal to work and result in termination of his employment. Roger appears to contend that because he did not act rude, the characterization of his actions as inappropriate is false and misleading. However, Employer's Rules of Conduct Policy required employees to act courteously and professionally. The record shows that Roger complained excessively at the Memorial Fund and contradicted his medically established physical capabilities at Habitat. As such, LIRAB's findings that Roger's actions were inappropriate under the circumstances, i.e., uncourteous and unprofessional, and constituted a refusal to work, are supported by reliable, probative, and substantial evidence.

Therefore,

IT IS HEREBY ORDERED that the January 9, 2013 Decision and Order and the March 13, 2013 Order Denying Motion to Reopen both entered by the Labor and Industrial Relations Appeals Board are affirmed.

DATED: Honolulu, Hawai'i, July 16, 2014.

On the briefs:

Joseph P.H. Ahuna, Jr.
Joseph P.K. Ahuna, III
David K. Ahuna
(Law Offices of Joseph P.H.
Ahuna, Jr.)
for Claimant-Appellant.

Beverly S.K. Tom
(Kessner Umebayashi Bain &
Matsunaga)
for Employer-Appellee, Self
Insured and
Insurance Carrier-Appellee.

Presiding Judge

Associate Judge

Associate Judge

6